NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AMERICAN FINANCIAL RESOURCES, INC., | Civil Action No. 12-7141 (ES) |
| Plaintiff, | OPINION |
| v. |  |
| COUNTRYWIDE HOME LOANS SERVICING, LP; BANK OF AMERICA, N.A.; and BAC HOME LOAN SERVICING, LP, |  |
| Defendants. |  |

**SALAS, DISTRICT JUDGE**

**I.     Introduction**

This matter comes before the Court on Defendants Countrywide Home Loans Servicing, LP, Bank of America, N.A., and BAC Home Loan Servicing, LP's ("Defendant")[1] motion to dismiss ("MTD") Plaintiff American Financial Resources, Inc.'s ("Plaintiff" or "AFR") First Amended Complaint ("FAC").  (D.E. No. 18).

The Court has considered the parties' submissions in support of and in opposition to the instant motion, and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendant's motion to dismiss is granted in part, and denied in part.  Specifically, Counts TWO, THREE, SIX, and SEVEN are *dismissed with prejudice*, and Counts ONE, FOUR, and FIVE may proceed.

---

[1] Bank of America, N.A. and/or its home loan servicing division, BAC Home Loan Servicing, LP, "succeeded to and/or assumed all of Countrywide Home Loans Servicing, LP's rights and obligations[,]" including those "under and pursuant to the Contract."  (D.E. No. 18, First Amended Complaint ("FAC") ¶¶ 7-9, 107-08).

1

## II. Factual and Procedural Background

Plaintiff originates mortgage loans, pools them, and sells them to investors. (FAC ¶ 16). Plaintiff retains the right to service certain of its pools of loans. (*Id.*). On October 1, 2008, Plaintiff subcontracted with Defendant to service some of Plaintiff's loan pools (the "Contract"). (*Id.* ¶ 17; Ex. A). Plaintiff, *inter alia*, paid fees to Defendant according to the Contract. (FAC ¶ 27). Specifically, Defendant was entitled to a flat fee per month for each loan file that Defendant serviced. (*Id.* ¶¶ 27-28). Other fees were based on the length of the loan's delinquency—i.e., the longer the loan was delinquent, the greater the fee paid to Defendant. (*Id.* ¶¶ 29-32). Pursuant to the Contract, Defendant was required to provide notice and implement loss mitigation strategies and/or initiate foreclosure proceedings if a loan remained delinquent after a certain amount of time. (*Id.* ¶ 32).

Plaintiff alleges that Defendant breached the Contract and the Acceptable Standard Servicing Procedures in at least thirty-five ways by, for example, (1) "[f]ailing to collect payments due under each Mortgage Loan[,]" (*id.* ¶ 33(a)); (2) "[f]ailing to maintain adequate records of each Mortgage Loan[,]" (*id.* ¶ 33(b)); (3) "[f]ailing to execute and deliver all appropriate notices[,]" (*id.* ¶ 33(d)); (4) "[f]ailing to provide a monthly delinquency report[,]" (*id.* ¶ 33(e)); (5) "[f]ail[ing] to maintain accurate records reflecting the status of ground rents, taxes, assessments, water rates and other current charges which are or may become a lien upon the Mortgaged Property[,]" (*id.* ¶ 33(j)); (6) maintaining incorrect and contradictory records because there were "instances of both positive and negative escrow balances[,]" (*id.* ¶¶ 34(a), 58-60); (7) "failing to allow [Plaintiff] proper access to its website reporting information for at least a month knowing that [Plaintiff] needed this information to comply with Annual Reporting Requirements" thus frustrating Plaintiff's ability to comply with federal and state authorities, (*id.*

¶ 34(f)); (8) failing to perform "loss mitigation and work-out procedure, such as loan modifications, short sales, and deeds-in-lieu[,]" (*id.* ¶ 34(n)); (9) failing to act in "good faith to resolve disputes[,]" (*id.* ¶ 33(k)); and (10) "[f]ailing to service and administer each Mortgage Loan from and after the related Servicing Transfer Date[,]" (*id.* ¶ 33(l)).

Plaintiff communicated the purported deficiencies to Defendant via email, thereby allegedly putting Defendant "on notice." (*Id.* ¶¶ 52-62). Defendant then allegedly represented to Plaintiff that it was "taking steps to rectify the[] substandard serving [sic] procedures . . . in a reasonably short period of time." (*Id.* ¶ 66). Thereafter, in October 2011, Defendant did not renew the Contract. (*Id.* ¶ 70). Plaintiff allegedly was not immediately able to find a suitable alternative servicer, so Plaintiff "remain[ed] in its relationship with Defendant[]" until Plaintiff found a new servicer—Aurora. (*Id.* ¶¶ 72-75). As a result of Defendant's alleged breaches, Plaintiff argues that its loan ratio became much higher, which hindered Plaintiff from making additional loans, increased the cost to borrow money, and that it was damaged in excess of $10,000,000. (*Id.* ¶¶ 49-50, 71-72, 87).

On November 16, 2012, Plaintiff initiated this action. (D.E. No. 1). On February 15, 2013, Plaintiff filed an Amended Complaint, alleging seven counts: breach of contract, breach of good faith and fair dealing, breach of fiduciary duty, indemnification and attorney's fees, alter ego and successor liability, gross negligence and punitive damages, and fraud. (D.E. No. 18; FAC ¶¶ 80-121). Defendant then filed the instant motion to dismiss on March 4, 2013. (D.E. No. 22). Plaintiff filed an opposition to the motion ("Opp.") on March 18, 2013. (D.E. No. 23). Defendant filed a reply to the opposition ("Reply") on March 25, 2013. (D.E. No. 24). The matter is now ripe for adjudication.

### III. Standard of Review

For a complaint to survive a motion to dismiss, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This inquiry is two-fold: the Court focuses on the sufficiency of the complaint and the claim's facial plausibility.

The Court determines the sufficiency of a complaint by accepting all well-pleaded factual allegations in the complaint as true, and then drawing all reasonable inferences in favor of the non-moving party. *Iqbal,* 556 U.S. at 678. But, the Court need not accept as true any legal conclusions found in the complaint. *Id.* Therefore, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations and citation omitted).

Second, a claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). Accordingly, the complaint must contain sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Additionally, in evaluating a plaintiff's claims, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild,* 20 F.3d 1250, 1261 (3d Cir. 1994).

**IV.     Analysis**

   **A.     Choice of Law**

Preliminarily, Plaintiff and Defendant seem to disagree over whether New Jersey or Texas law applies to the instant case. (D.E. No. 22-7, Defendant's Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("MTD") at 10 n.4); (D.E. No. 23, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Opp.") at 9 n.3).

Article VIII, Section 8.10 of the Subservicing Contract provides that "[t]his Agreement shall be governed by and interpreted in accordance with the laws of the jurisdiction of its corporation applicable to agreements entered into and wholly performed within said jurisdiction." (Compl., Ex. A). Because this language is ambiguous,[2] the Court will conduct a choice-of-law analysis.

This Court must first determine whether a conflict exists between the laws of the interested states. *Rowe v. Hoffman-LaRoche, Inc.*, 189 N.J. 615, 621 (2007). If there is no conflict, the forum state applies its own laws. *Id.* If there is a conflict between the states' laws, then the Court must determine each state's interest in resolving the specific issues in dispute. *Harper v. LG Elec. USA, Inc.*, 595 F. Supp. 2d 486, 489 (D.N.J. 2009). The Court therefore identifies governmental policies underlying the law of each state and determines whether these policies are affected by each state's contacts to the litigation and to the parties. *Id.* The Court then applies the law of the state with the greatest interest in governing the particular issue. *Id.*

Ultimately, New Jersey and Texas law do not conflict for purposes of this motion. Specifically, both New Jersey and Texas require the following elements for a breach of contract

---

[2] "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations." *Kaufman v. Provident Life & Cas. Ins. Co.*, 828 F. Supp. 275, 282-83 (D.N.J. 1992).

5

claim: "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Compare McLaughlin, Inc. v. Northstar Drilling Techs., Inc.*, 138 S.W. 3d 24, 27 (Tex. App. 2004) (internal quotation omitted), *with Frederico v. Home Depot,* 507 F.3d 188, 203 (3d Cir. 2007). Since Plaintiff must prove the same elements for a breach of contract claim in both New Jersey and Texas, there is no conflict. As such, the Court will apply New Jersey law to decide Plaintiff's breach of contract claim. *See Rowe*, 189 N.J. at 621.

Similarly, in interpreting the Contract and determining the applicability of the economic loss doctrine, the Court will apply New Jersey law. The economic loss doctrine precludes "recovery in tort for economic losses resulting from the failure of a party to perform under a contract" in both New Jersey and Texas. *Compare Lamar Homes, Inc. v. Mid Continent Cas. Co.,* 242 S.W.3d 1, 12 (Tex. 2007), *with Horizon Grp. of New England, Inc. v. N.J. Schs. Const. Corp.*, 2011 WL 3687451, at *5 (N.J. Super. App. Div. Aug. 24, 2011) (ruling that a contractual remedy is necessary if the plaintiff's claim alleges that defendant failed to do what he/she promised). And tort damages are recoverable if defendant's conduct "would give rise to liability independent of the fact that a contract exists between the parties." *S.W. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex. 1991); *Saltiel v. GSI Consultants, Inc.,* 170 N.J. 297, 311 (2002) (Tort recovery is appropriate when there is an "affirmative dut[y] imposed by law" that is independent of the contract.). New Jersey and Texas law do not conflict because both states apply the same economic loss doctrine. Therefore, the Court will apply New Jersey's economic loss doctrine. *See Rowe*, 189 N.J. at 621.

## B. Count I: Breach of Contract

The parties dispute two issues regarding the breach of contract claim: (1) whether Plaintiff has sufficiently pleaded the elements of a breach of contract claim, and (2) whether Plaintiff has waived any potential breach of contract claim.

### 1. Adequacy of breach of contract claim

Under New Jersey law, Plaintiff must plead the following elements for a valid breach of contract claim: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom, and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot,* 507 F.3d 188, 203 (3d Cir. 2007); *see also Beals v. Bank of America, N.A.*, No. 10–54272011 WL 5415174, at *9 (D.N.J. Nov. 4, 2011).

Here, Plaintiff has furnished sufficient facts for this Court to infer the existence of a valid Subservicing Contract between the parties that went into effect on October 1, 2008. (Compl., Ex. A; FAC ¶¶ 6, 17-20). Plaintiff has also alleged enough facts for this Court to reasonably infer that Defendant breached the Contract, (*see, e.g.*, FAC ¶¶ 33(a)-(p), 34(a)-(s)), and that Plaintiff was harmed as a result of this breach, (*see, e.g.*, *id.* ¶ 87(a)-(l)).

The parties do not dispute the existence of a valid contract. However, Plaintiff alleges Defendant failed to live up to its contractual obligations by, for example, "fail[ing] to collect all payments due under each Mortgage Loan; [f]ail[ing] to maintain adequate records of each Mortgage Loan[;] [f]ail[ing] to make periodic Mortgage Loan interest rate and monthly payment adjustments[;] [f]ailing to execute and deliver all appropriate notices[; and f]ail[ing] to provide a monthly delinquency report. . . ." (*Id.* ¶ 33(a)-(e)). In total, Plaintiff alleges that Defendant breached the Contract in at least thirty-five ways. (*See id.* ¶¶ 33 (a)-(p); 34 (a)-(s); 38).

As a result of these breaches, Plaintiff alleges direct and consequential harm, including financial, reputational, and intangible business injuries exceeding $10,000,000. (*Id.* ¶¶ 48-50, 87(a)-(l)). Defendant argues that Plaintiff failed to allege a cognizable loss. (MTD at 17-20; Reply at 5). Specifically, Defendant takes issue with some of Plaintiff's alleged damages that are indirect, and consequential damages, which were not contemplated by the parties. (*Id.*). However, at this stage, Plaintiff is only required to plead a loss, which is shown by "simply supply[ing] an estimate of damages, calculated with a reasonable degree of certainty." *Solo v. Bed Bath & Beyond, Inc.,* No. 06-1908, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (quoting *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 21 (1994)). Here, Plaintiff has met its liberal burden at this stage of the litigation by alleging a litany of losses in the FAC, (¶ 87(a)-(l)), that may or may not be substantiated at a later stage of the litigation.

Plaintiff has also sufficiently pled the final element—that Plaintiff performed its own contractual obligations. Plaintiff, for example, "furnished to Defendants complete and accurate Mortgage Loan data[;] pa[id] Defendants the servicing fees for services rendered according to the Fee Schedule of the Contract[;]" and attempted to work with Defendant to resolve the alleged servicing deficiencies. (*Id.* ¶¶ 22, 53-63). Defendant maintains, however, that Plaintiff did not provide formal notice as was required under the Contract. (MTD at 10-15). The relevant language, found in Article III, Section 3.29[3] of the Contract, is ambiguous because it is unclear whether formal notice is required, and, if it is necessary, whether email communications over an extended period of time constitute formal notice. The Court need not make this determination at such an early stage because Plaintiff has pleaded sufficient facts to raise a plausible inference

---

[3] Article III, Section 3.29 of the Contract provides that "[i]n the event of a dispute arising from any act or omission by Servicer or Owner hereunder during the course of this Agreement, Servicer and Owner shall use best efforts to work together in good faith to resolve such dispute within a time period that is reasonable in the context of the cause of the dispute. Except in the case of a monetary error, Owner and Servicer shall both work together in good faith to resolve the dispute within thirty (30) days of a formal notice from either party."

that Plaintiff performed its own contractual obligations, including the notice requirement.[4] (*See* FAC ¶¶ 21-22; 53-63); *see also Twombly*, 550 U.S. at 570 (requiring plausibility, not probability).

### 2. Waiver of breach of contract claim

Defendant's final argument—that Plaintiff waived its breach of contract claim—is meritless. Defendant argues that Plaintiff failed to terminate the Contract despite the alleged breaches, and that Plaintiff continued to collect benefits from Defendant's performance. (MTD at 15-17). Plaintiff alleges, *inter alia*, that it had the *option* to terminate the Contract. (Opp. at 7-9) (emphasis added). Article VII, Section 7.3 of the Subservicing Contract provides that the

> Owner *may* terminate this Agreement upon written notice to Servicer if one or more of the following Events of Default by Servicer shall occur and shall not have been remedied: . . . . (b) failure on the part of Servicer duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Servicer set forth in the Agreement which continues unremedied for a period of thirty (30) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to Servicer by owner or by the Custodian, if any. . . .

(emphasis added). Article VII, Section 7.3 further provides that "[i]n case one or more Event(s) of Default by Servicer shall occur and shall not have been remedied, the Owner, by notice in writing to Servicer *may* . . . terminate all the rights and obligations of Servicer under this Agreement." (emphasis added). Repeated use of the word "may" denotes a choice. As such, Plaintiff *could* have terminated the Contract, though it did not need to do so. Moreover, Plaintiff argues it was financially infeasible to terminate the Contract because Plaintiff could not find a

---

[4] The Court further notes that Sec. 8.1 of the Contract bolsters Plaintiff's position that "notice" was given via email. Contrary to Defendant's arguments regarding notice, (*see* MTD at 13-14), Sec. 8.1 does not prohibit notice to be given via email. Though a delivery address is included in the Contract, in today's electronic world, one could easily argue that an email to an individual located in one of the cited addresses, constitutes "notice" under the Contract. This is especially true in light of the inclusive "by other means" language included in Sec. 8.1.

suitable alternative servicer without incurring substantially greater financial harm.[5] (*Id.* ¶¶ 70-74).

Thus, Plaintiff has pled enough facts which, when taken as true, create a plausible inference that Plaintiff is entitled to relief for its breach of contract claim. Relatedly, Plaintiff's claims for indemnification and attorney's fees, (*id.* ¶¶ 101-05; Compl., Ex. A, §§ 5.7(c), 8.9), and for alter ego and successor liability, (*id.* ¶¶ 106-09), also survive Defendant's motion to dismiss since they depend on and are derivative of Plaintiff's breach of contract claim, which survives Defendant's motion to dismiss.[6]

C. **Economic Loss Doctrine**

Defendant argues that the economic loss doctrine bars several of Plaintiff's claims: breach of the implied covenant of good faith and fair dealing, breach of the fiduciary duty, gross negligence and punitive damages, and fraud. (MTD at 22-27). Plaintiff counters that the economic loss doctrine does not bar any of the aforementioned claims because the alleged breaches arose from duties that were independent of any contractual obligation. (Opp. at 16-17).

New Jersey applies the economic loss doctrine to contracts for both goods and services. *Saltiel v. GSI Consultants, Inc.,* 170 N.J. 297, 310 (2002); *see also Dynaelectric Co. v. Westinghouse Elec. Corp.*, 803 F. Supp. 985, 986-87 (D.N.J. 1992) (applying economic loss doctrine to contract and subcontracts for construction of cogeneration facility). The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,*

---

[5] AFR eventually found an alternative servicer—Aurora. (FAC ¶¶ 72-75).
[6] Defendant makes no argument specifically addressing Plaintiff's claim for indemnification and attorney's fees. Defendant only asserts in a footnote that said claim should be dismissed on the same grounds as the breach of contract claim.

226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Co.,* 66 F.3d 604, 618 (3d Cir.1995)).

The doctrine strives to delineate the boundary separating contract and tort by barring tort theories when the relationship between parties is contractual. *See Dean v. Barrett Homes, Inc.,* 204 N.J. 286, 295 (2010). Indeed, the New Jersey Supreme Court has declared "that the purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties[] whereas [a] contractual duty, by comparison, arises from society's interest in the performance of promises." *Spectraserv, Inc. v. Middlesex Cnty. Util. Auth.*, 2013 WL 4764514, at *6 (N.J. Super. App. Div. July 25, 2013) (internal quotations omitted).

Nonetheless, "relationships created by contract can give rise to affirmative duties imposed by law. For example, although limited in scope, a bailment invariably gives rise to tort liability when the bailee takes possession of the bailor's property, separate and apart from the liability imposed by the parties' contract." *Saltiel v. GSI Consultants, Inc.,* 170 N.J. 297, 311, (2002) (internal citations omitted). In such a scenario, a litigant is able to pursue claims under both a breach of contract theory and a tort theory.

In sum, "remedies in tort relating to a breach of contract may not be maintained in addition to those established under the contract itself in the absence of any independent duty owed by the breaching party to the plaintiff." *Int'l Minerals and Min. v. Citicorp, N.A,* 736 F. Supp. 587, 597 (D.N.J. 1990).

### 1. Count II: Implied Covenant of Good Faith and Fair Dealing

Defendant argues that Plaintiff's good faith and fair dealing claim is "entirely duplicative of the breach of contract claim because Defendant's alleged failures are the predicates for the

11

breach of contract claim." (MTD at 21-22). Plaintiff alleges, however, that Defendant breached contractual, legal, and regulatory obligations, including, for example, "the need to offer qualified delinquent borrowers loan modification programs." (Opp. at 11). Such breaches, Plaintiff argues, fall outside the contract because they violate statutory and regulatory law, as well deviate from the normal standard of care owed by a prudent mortgage servicer. (*Id.* at 15). Despite Plaintiff's arguments, the Court finds that Defendant's alleged breach of the implied covenant of good faith and fair dealing claim arises from the parties' contractual arrangement and is therefore barred by the economic loss doctrine.

Plaintiff's FAC lists Defendant's alleged breaches under two headings: (1) "Defendant[] failed to perform according to contract[,]" (FAC ¶ 33); and (2) "Defendant['s] defaults under the Contract and failure to follow Acceptable Standard Servicing Procedures. . . ." (*Id.* ¶ 34). Plaintiff also states that "[t]he foregoing acts and omissions of Defendants [1] are all in derogation of their contractual obligations[; 2] fall short of the standard of care that a reasonable and prudent servicer would exercise under similar circumstances[;] and [3] fall short of certain legal, regulatory and quasi regulatory requirements." (*Id.* ¶ 44). The duties that were allegedly breached were not implied but were, in fact, expressly included in the Contract. For example, Article III, Section 3.29 of the Contract provides that where a dispute arises "during the course of [the] Agreement, [Defendant] and [Plaintiff] shall use *best efforts to work together in good faith* to resolve such dispute. . . ." (emphasis added). More importantly, Article I, Section 1.1 of the Contract provides that

> [t]he *procedures*, including prudent collection and loan administration procedures, and *standard of care employed by prudent mortgage servicers* for mortgage loans similar to the Mortgage Loans. Such standard of care (i) shall be in *accordance with investor guidelines*, (ii) *shall not be lower than that Servicer customarily employs and exercises in servicing and administering similar mortgage loans* for its own account, (iii) shall be in accordance with the requirements of Servicer's

12

policies and procedures, (iv) shall be in *substantial compliance with all federal, state and local laws, ordinances, rules and regulations*, as amended from time to time, *and* (v) *shall be consistent with industry standards*.

(D.E. No. 2) (emphasis added).

Plaintiff and Defendant crafted a comprehensive commercial Contract to include a good faith requirement as well as an obligation to abide by all laws and regulations. (*See* D.E. No. 2, Art. 1, Sec. 1.1). This combined contractual language makes clear that "the scope of the parties' obligations was defined by the contract." *Saltiel,* 170 N.J. at 316. Plaintiff cannot therefore recover in tort for breach of an implied duty that was *expressly* included in the Contract. *See Kapossy v. McGraw–Hill, Inc.,* 921 F. Supp. 234, 248 (D.N.J. 1996) (stating that courts "imply a covenant of good faith and fair dealing in order to protect one party to a contract from the other party's bad faith misconduct . . . where there is no breach of the express terms of the contract"); *Trico Equip., Inc. v. Manor*, No. 08–5561, 2011 WL 705703, at *6 (D.N.J. Feb. 22, 2011) ("[Plaintiff's] claim for breach of the covenant of good faith and fair dealing is barred by the economic loss doctrine."); *Martino v. Everhome Mortg.*, 639 F. Supp. 2d 484, 494 (D.N.J. 2009) ("[M]ere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort."). Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is dismissed.

### 2. Count III: Fiduciary Duty

Similarly, Defendant argues that Plaintiff's breach of fiduciary duty claim is barred by the economic loss doctrine because Plaintiff's claim is duplicative of the underlying contractual relationship and the obligations imposed therein. (MTD at 24). Plaintiff claims that Defendant (1) was Plaintiff's agent, (2) was supposed to be prudent, and (3) failed to protect Plaintiff as a beneficiary by "intentional[ly] or negligent[ly] misrepresent[ing] . . . the status of their servicing

obligations. . . ." (Opp. at 11-12; FAC ¶¶ 94-99). In response, Defendant states that Plaintiff's reliance on Sections 3.6 and 3.20 of the Contract that identifies BOA as an "agent," is in itself a "concession that its fiduciary duty claim flows directly from the parties' contract and is thus barred by the economic loss doctrine." (D.E. No. 24, Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Reply") at 11 n.3) (internal citations and quotations omitted). For the following reasons, Plaintiff's fiduciary duty claim is also barred by the economic loss doctrine.

A fiduciary relationship is one in which a "party places trust and confidence in another who is in a dominant or superior position. A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 150 N.J. 550, 563 (1997); *Garcia v. Universal Mortg. Corp.*, No. 12–460, 2013 WL 1858195, at *4 (N.D. Tex. May 3, 2013) (same). It is important to note that a fiduciary relationship does not exist "in ordinary commercial business transactions." *Alexander v. CIGNA Corp.,* 991 F. Supp. 427, 438 (D.N.J. 1998); *see also Garcia*, 2013 WL 1858195, at *4 ("To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit.") (internal quotations omitted).

Here, Plaintiff and Defendant are sophisticated financial institutions that entered into a comprehensive and detailed commercial Contract containing many mutual obligations, responsibilities, and procedures. There are no facts showing pre- or post-contractual dominance or control by Defendant; no facts showing that the Parties did not deal at arm's length; and no facts showing that the parties entered into something other than an ordinary commercial relationship. Thus, Defendant did not owe Plaintiff a fiduciary duty.

### 3. Count VI: Gross Negligence and Punitive Damages

Defendant next moves to dismiss Plaintiff's negligence claim because it is similarly duplicative of the breach of contract claim. As with the other counts, Defendant argues that the facts underlying the alleged negligence serve as a foundation for Plaintiff's breach of contract claim. (MTD at 24-25). Plaintiff counters that Defendant was grossly negligent when it violated contractual, legal, and regulatory federal and state laws. (Opp. at 14-15). Specifically, Plaintiff argues that Defendant failed to act as a reasonably prudent mortgage servicer by, for example, not "complying with HUD guidelines" and by "failing to have an adequate staff." (*Id.*).

"Whether a negligence claim is barred by the economic loss doctrine turns on whether the party has asserted an independent duty apart from that imposed by the contract."[7] *Dutton Rd. Assocs. LP v. Sunray Solar, Inc.*, No. 10–5478, 2011 WL 1375681, at *3 (D.N.J. Apr. 12, 2011) (citing *Saltiel,* 170 N.J. at 316). Here, Defendant owed Plaintiff a contractual duty of care. Indeed, the Contract required that Defendant comply with the "standard of care employed by prudent mortgage servicers[,]" and that Defendant "compl[y] with all federal, state and local laws, ordinances, rules and regulations." (Compl., Ex. A, § 1.1).

In light of such contractual language, the Court finds that the economic loss doctrine bars Plaintiff's negligence claim.[8] *See, e.g.*, *Beals v. Bank of America, N.A.*, No. 10–5427, 2011 WL 5415174, at *16 (D.N.J. Nov. 4, 2011) ("The duties described are those that Bank of America

---

[7] Similarly, under Texas law, a claim for gross negligence requires that there be a *legal* duty between the parties. *Singha v. BAC Home Loans Serv., LP*, No. 10–692, 2011 WL 7678684, at *10 (E.D. Tex. June 1, 2011) ("The threshold inquiry regarding a gross negligence claim is whether a legal duty existed.") (citation omitted) (emphasis added).

[8] The Court notes that Plaintiff identifies several deviations of the "reasonably prudent mortgage servicer" duty of care that allegedly violate state and federal law: failure to hire adequate staff, comply with HUD guidelines, etc. (Opp. at 14-15). But state and federal law violations are accounted for in the Contract. Sec. 1.1 is entitled "Acceptable Standard Servicing Procedures." It requires the "standard of care employed by *prudent mortgage servicers*" and "*substantial compliance with all federal, state and local laws,* ordinances, rules and regulations . . . and shall be *consistent with industry standards*." (Compl., Ex. A, § 1.1) (emphasis added). Thus, Plaintiff can properly seek redress for any alleged violations of Sec. 1.1 under a breach of contract theory.

15

owes not to the public at large, but rather . . . pursuant to [a] contract."); *see also Martino v. Everhome Mortg.*, 639 F. Supp. 2d 484, 494 (D.N.J. 2009) ("EverHome asserts that the negligence claim against it is barred by the economic loss doctrine. The Court agrees. Plaintiffs and EverHome were parties to a contract. . . . Plaintiffs' claims are based on allegedly improper and illegal payments arising out of the parties' contractual relationship."); *Int'l Minerals and Min.*, 736 F. Supp. at 597 ("Where a party does not owe another a duty of care absent the existence of a contract, a separate duty of care cannot arise simply by virtue of the existence of the contract.").

Relatedly, Plaintiff's punitive damages claim is also barred. Plaintiff merely argues that "Defendant knew [that] their intentional acts and omissions [would] serious[ly] harm [Plaintiff]." (FAC ¶ 113). This is insufficient to bypass the economic loss doctrine because Plaintiff has not alleged the violation of a duty that is separate and apart from the parties' contractual obligations. *See Ceruzzi Holdings, LLC v. Inland Real Estate Acquisitions, Inc.*, No. 09–5440, 2010 WL 1752184, at *4 (D.N.J. Apr. 29, 2010) (no punitive damages in a breach of contract claim); *Stony Brook Constr. Co., Inc. v. Coll. of N.J.*, 2008 WL 2404174, at *8 (N.J. Super. Ct. App. Div. June 16, 2008) ("[A] breach of contract, even if intentionally committed, does not warrant an award of punitive damages unless the defendant also breached a duty independent of the contract.") (internal citations omitted)).[9]

### 4. Count VII: Fraud

Defendant finally argues that Plaintiff's fraud claim is also barred by the economic loss doctrine because the alleged misrepresentations concerned the performance of the Contract. (MTD at 22-23, 26). Plaintiff alleges that Defendant misrepresented certain corrective actions

---

[9] Defendant also argues that Plaintiff's gross negligence claim is time-barred under New Jersey's two-year statute of limitations. (MTD at 30-34). The Court need not address this argument because it dismisses Plaintiff's negligence claim pursuant to the economic loss doctrine.

during the course of the Contract, (FAC ¶¶ 116-120), and that Defendant "intentionally lied to and misle[d] Plaintiff." (Opp. at 11).

New Jersey recognizes two types of fraud claims: fraud in the inducement and fraud in the performance. Fraud in the inducement involves "[1] a material misrepresentation of a presently existing or past fact, [2] made with knowledge of its falsity and [3] with the intention that the other party rely thereon, [4] resulting in reliance by that party to his detriment." *Beijing Gongmei Imp. & Exp. Co., Ltd. V. Iabara,* No. 10–2821, 2012 WL 3228711, at *7 (D.N.J. Aug. 6, 2012) (citing *Gleason v. Nw. Mortg. Inc.*, 243 F.3d 130, 144 (3d Cir. 2001)). Fraud in the inducement is not prohibited by the economic loss doctrine as long as the misrepresentations "precede the actual commencement of the agreement." *Chen v. HD Dimension, Corp.*, No. 10–863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010) (internal citations omitted). *See also State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC,* 646 F. Supp. 2d 668, 682 (D.N.J. 2009) ("[I]nducement claim can only occur during contract formation or modification.").

Here, Defendant's alleged misrepresentations occurred during performance of the contract and were related to the underlying contractual obligations. (FAC ¶¶ 116-19). Specifically, Plaintiff allegedly asked Defendant to correct certain servicing deficiencies while the Contract was in effect. (*Id.*). Defendant represented "that they were taking steps to correct their servicing deficiencies" and Plaintiff allegedly relied on Defendant's misrepresentations in not terminating the Contract. (*Id.*). Defendant's alleged wrongdoings have nothing to do with an inducement to contract with Plaintiff. As such, Plaintiff's allegations do not amount to fraud in the inducement.

Consequently, Plaintiff's allegations amount to a claim for fraud in the performance, which is barred by the economic loss doctrine. *See, e.g.*, *Pub. Serv. Enter. Grp., Inc. v. Phila.*

*Elec. Co.*, 722 F. Supp. 184, 200 (D.N.J. 1989) (stating that fraud in the performance is barred by the economic loss doctrine). "[F]raud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action." *Beijing,* 2012 WL 3228711, at *7 (citing *Gleason,* 243 F.3d at 144). Plaintiff has failed to plead fraud as separate and distinct from the performance of the Contract. Therefore, the economic loss doctrine bars Plaintiff's fraud claim. *See, e.g.*, *Arcand v. Bro. Intern Corp.*, 673 F. Supp. 2d 282, 308-310 (D.N.J. 2009) ("[A] plaintiff may be permitted to proceed with tort claims sounding in fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement.").

## V. Conclusion

For the foregoing reasons, Counts TWO, THREE, SIX, and SEVEN are *dismissed with prejudice*,[10] and Counts ONE, FOUR, and FIVE *may proceed*. An appropriate order shall accompany this opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[10] Plaintiff seeks leave to amend if the Court grants Defendant's motion to dismiss. (Opp. at 20). However, such leave is futile as no amendment can overcome the economic loss doctrine barring counts two, three, six, and seven. "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and *futility*." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (internal citations omitted) (emphasis added).